UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

MICHAEL MCINTOSH and REBECCA
MCINTOSH,                                                                                         Plaintiffs,

v.                                                                           Civil Action No. 4:21-cv-126-DJH-HBB

CITY OF MADISONVILLE, KENTUCKY,                                                 Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Michael and Rebecca McIntosh filed the instant action against the City of Madisonville, Kentucky, alleging various violations of constitutional and state law in connection with the condemnation of their property. (Docket No. 13) The City filed a motion for summary judgment (D.N. 22) and subsequently filed a motion to consider supplemental authority. (D.N. 26) For the reasons outlined below, the Court will grant the City's motions.

**I.**

Plaintiffs own a mobile-home park in Madisonville.[1] (D.N. 24-5, PageID.443) In 2020, the City received a complaint from one of Plaintiffs' tenants, Jessica Webb, about the condition of her mobile home. (D.N. 24-6, PageID.488–89) Webb advised the City that her mobile home contained mold and mildew that she feared was hazardous and Plaintiffs would not resolve. (*Id.*, PageID.489) Captain Michael Phillips, Madisonville's Code Enforcement Officer, inspected the mobile home and found

> organic growth on the ceiling; moisture droplets that appeared to be coming from the exterior side, from the roof, on the ceiling; modifications made in several areas that appeared to be . . . structurally holding up the ceiling. [Webb] was not able to open the back door or windows. And various outlets throughout the structure were not working. The floor was also soft in some areas.

---

[1] Although Plaintiffs co-own the mobile-home park, Michael manages it. (D.N. 24-5, PageID.462)

1

(D.N. 24-7, PageID.517) Frank Wallace, a building official with the City of Madisonville, also inspected Webb's home. (D.N. 24-6, PageID.488) He observed

> a '70-something model mobile home that had multiple areas [that] looked like vegetative growth or possible mold on the ceiling, walls, or water on the ceiling that was accumulated. There was two two-by-fours that had strips of lumber that had been placed on the ceiling material, drywall, paneling, whatever it was, was disconnected [and] coming down from the ceiling. And it was in disrepair.

(*Id.*, PageID.488) Wallace determined that the mobile home presented an "imminent danger" based on its age and "the amount of damage and rot." (*Id.*, PageID.490) As a result, the City sent Plaintiffs a letter on November 19, 2020, advising them that the property was condemned:

> 11/19/2020
>
> MICHAEL & REBECCA MCINTOSH
> 5400 HOPKINSVILLE RD
> MADISONVILLE, KY 42431-
> RE: **Condemned Property**
>
> 514 Sugg Street
>
> Via: USPS
>
> Dear MICHAEL & REBECCA MCINTOSH:
>
> The property listed above is in violation of the 2012 International Property Maintenance Code. The structure is unsafe for occupancy and **condemned** at this time. Be advised that you have thirty (30) days to submit your plans for the renovation and repairs needed to bring this property up to code.
>
> Thank you,
>
> Frank Wallace
> Building Official
>
> CC: Capt. Michael Phillips
> Code Enforcement Officer

(D.N. 24-1) The City also posted a notice on the mobile home:

2



(D.N. 23-2) After receiving the condemnation letter, Michael called the City on December 1, 2020, requesting a copy of the International Property Maintenance Code, which Wallace gave him. (D.N. 24-6, PageID.494) That same day, Michael gave the City a letter in which he asserted that the home was exempt from local jurisdiction and that the tenant had deliberately caused the

3

damage in the home using a garden hose.[2] (D.N. 24-2) In the letter, Michael requested that the City withdraw the condemnation notice.[3] (*Id.*) Wallace testified that the time Michael came to pick up the copy of the property code and drop off the letter was the only interaction that he had with Michael regarding the mobile home. (D.N. 24-6, PageID.494) According to Wallace, Michael did not say anything about the condition of the home. (*Id.*)

Michael did not receive a response to the letter. (D.N. 24-5, PageID.449; D.N. 24-6, PageID.495) After not receiving a response, Michael called Wallace's office, and he spoke with an individual who told him that he could sue the City if he disagreed with the condemnation decision. (D.N. 24-5, PageID.449) Michael also asked "for a hearing at the board of adjustment," but the person he talked to said that the City does not have a board of adjustment. (*Id.*) Michael also called Wallace's office and talked to Captain Phillips. (*Id.*, PageID.457) According to Michael, Phillips told him, "We do not care what your letter said . . . . [a]nd I'm going to tear that house down." (*Id.*)

On the other hand, Phillips testified that Michael called disputing the condition of the property and the City's jurisdiction. (D.N. 24-7, PageID.520) According to Phillips, he advised Michael that any disputes about the condition of the property needed to go to Wallace. (*Id.*, PageID.519–20) Phillips also testified that Michael called "various [other] times," requesting recommendations on repairs. (*Id.*, PageID.520) Phillips "advised [Michael] every time" that only Wallace can give repair recommendations and that all he could do was pass on the information to

---

[2] Wallace and the City of Madisonville's Code Enforcement Officer testified that the damage to the mobile home appeared to exceed anything the tenant could have done with a hose. (D.N. 24-7, PageID.520; D.N. 24-6, PageID.495)

[3] Michael also posted his own notice on the home that said "[N]o trespassing without owner's permission. City of Madisonville does not have jurisdiction. No contractors may enter the property." (D.N. 24-5, PageID.450)

4

Wallace. (*Id.*) Phillips testified that Michael did not "follow what [he] had to say," and did not seem to actually want to remedy the situation. (*Id.*, PageID.521) Wallace also testified that Michael did not attempt to contact him or set up any meeting to discuss proposed repairs. (D.N. 24-6, PageID.495)

On December 19, 2020, Michael sent another letter to the City, in which he stated that the City lacked jurisdiction and that he was in the process of repairing the home. (D.N. 24-3) He also again requested that the City revoke its condemnation notice. (*Id.*) Wallace does not recall receiving the letter. (D.N. 24-6, PageID.496)

The City demolished the mobile home on December 21, 2020. (D.N. 24-5, PageID.448) That morning, Michael went to the property to try to stop the demolition and talk to Phillips and Wallace. (*Id.*) According to Michael, Wallace told Michael that he was there to demolish the property because it was in violation of the International Property Maintenance Code but that he would not discuss anything further. (*Id.*, PageID.458) Michael asserts that "Captain Phillips said that he understood my situation and he wasn't going to tear the house down." (*Id.*, PageID.448) Around that time, Michael attempted to call Kentucky's Department of Housing. (*Id.*) Michael testified that Phillips changed his mind "and decided he was going to go ahead and tear the house down because he didn't like that [Michael] was talking to somebody from the State." (*Id.*) Phillips disputes that he was upset by Michael's attempt to contact the State. (D.N. 24-7, PageID.522) Michael also attempted to contact the mayor, the city councilman, the city attorney, and the sheriff, but no one answered the phone or returned his call. (D.N. 24-5, PageID.448) Michael ultimately left because police present at the property told him to leave. (*Id.*, PageID.458)

5

Michael agrees that the mobile home contained mold, but he contends that he had repaired the home before the City demolished it.[4]  (D.N. 24-5, PageID.445, 448)  Michael asserts that after the tenant moved out, he "completely cleaned and sanitized [the home].  And there was, in [his] opinion, no mold present."  (*Id.*, PageID.448)  According to Wallace, however, Michael had only "smeared white paint and primer all over everything.  [The home] [s]till had the same lumber.  Still had the same sag.  Still had the same deterioration."  (D.N. 24-6, PageID.497)  Phillips also observed merely cosmetic repairs; he saw "[a]n attempt to cover up organic growth . . . various cover-ups throughout that just seemed like [Michael] was making it try [sic] to seem like it was going to meet code compliance."  (D.N. 24-7, PageID.522)  Michael disputes that Wallace and Phillips reentered the property to observe his repairs.  (*See* D.N. 24-5, PageID.457)

Plaintiffs sued the City of Madisonville in Hopkins Circuit Court, and the City removed the action to this Court.  (D.N. 1)  Plaintiffs subsequently amended the complaint, claiming that the City violated their rights to procedural and substantive due process and subjected them to an unlawful taking.  (D.N. 13)  They also assert state-law claims for trespass, violations of Kentucky's Local Government Enforcement Board Act, punitive damages, and attorney fees.  (*Id.*)  The City filed a motion for summary judgment (D.N. 23) and later filed a motion to consider supplemental authority in further support of its motion for summary judgment.  (D.N. 26)

**II.**

The City seeks to introduce *Hunt v. City of Madisonville, Kentucky*, No. 4:22-CV-00010-RGJ, 2023 WL 4764699 (W.D. Ky. July 26, 2023), as additional support for its motion for summary judgment.  (D.N. 26)  The *Hunt* plaintiff, like Plaintiffs here, brought procedural-due-

---

[4] Phillips and Wallace testified that pursuant to the terms of the notice posted on the property (*see* D.N. 23-2), Michael was not authorized to enter the property and did not otherwise receive the City's permission to make any repairs.  (D.N. 24-7, PageID.522; D.N. 24-6, PageID.495)

6

process, substantive-due-process, and takings claims against the City of Madisonville after it condemned his property. *Id.* at *1. District Judge Rebecca Grady Jennings ruled in favor of the City, holding that its actions were constitutional. *Id.* at *3–6.

Plaintiffs argue that *Hunt* is distinguishable because it is not final, as the plaintiff has appealed,[5] and that the facts of this case are distinguishable because here, Michael "appealed the decision of Frank Wallace . . . no less than two (2) times prior to the demolition of the subject manufactured home" and he "was actively engaged in remediation of the property." (D.N. 27, PageID.561) Although the facts in *Hunt* are not identical to those at issue here, *Hunt* is obviously similar to Plaintiffs' case: the constitutional claims are the same; the defendant is the same; and both cases involve a challenge to the City's condemnation process. In addition, Plaintiffs' counsel represented the *Hunt* plaintiff. Given these similarities, the Court will grant the City's motion to consider *Hunt* as supplemental authority.[6]

### III.

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R.

---

[5] In October 2023, the Sixth Circuit dismissed the appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. *Hunt v. City of Madisonville*, No. 4:22-cv-10-RGJ-HBB (W.D. Ky. July 26, 2023), ECF No. 30.

[6] *Hunt* is at most persuasive authority, as "[t]he opinions of other federal district courts, while persuasive, are not binding authority." *Nationwide Mut. Fire Ins. Co. v. Hatton*, 357 F. Supp. 3d 598, 604 (E.D. Ky. 2019).

Civ. P. 56(c)(3); *see Shreve v. Franklin Cnty.*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

Plaintiffs only assert that their procedural-due-process, substantive-due-process, takings, and trespass claims can survive summary judgment; they did not address their statutory, punitive-damages, or attorney-fees claims in their response to the City's motion for summary judgment. (*See* D.N. 24, PageID.372) "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011)). Accordingly, Plaintiffs have abandoned their claims for violations of the Local Government Enforcement Board Act, punitive damages, and attorney fees. The City is therefore entitled to summary judgment as to those claims. The Court will now consider whether a reasonable jury could find for Plaintiffs on their remaining constitutional and trespass claims.

**A.     Procedural Due Process**

"Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). "The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cnty.*, 701

F.3d 180, 185 (6th Cir. 2012) (citing *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)). Only the third element is at issue here; the City does not dispute that it deprived Plaintiffs of a protected property interest by demolishing the mobile home. (*See* D.N. 23-1)

  **1.  Notice**

Plaintiffs do not dispute that they received the City's letter and saw the condemnation warning posted on the mobile home, but they argue that the City's communications failed to provide adequate notice that Plaintiffs' property would be demolished, in violation of their procedural-due-process rights. (D.N. 24, PageID.360–62) "[D]ue process requires the [state] to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). "The Constitution . . . judges the adequacy of notice from the perspective of the sender, not the recipient." *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013). "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led." *Ming Kuo Yang v. City of Wyoming*, 793 F.3d 599, 605 (6th Cir. 2015) (internal quotation marks omitted) (quoting *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1203 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010)). Thus, "a property owner is charged with knowledge that his building will be demolished even if the notice does not explicitly say so if he would have found out about the planned demolition had he made the inquiry the notice called for." *Hunt*, 2023 WL 4764699, at *3 (citing *Ming Kuo Yang*, 793 F.3d at 605).

Plaintiffs received the same condemnation letter and posting on the condemned property as the *Hunt* plaintiff. *See Hunt*, No. 4:22-cv-00010-RGJ-HBB, ECF Nos. 20-1, 17-10. In *Hunt*, Judge Jennings determined that the City provided adequate notice:

> [T]he content of Madisonville's notice was adequate to notify Hunt that the car wash could be demolished. Madisonville told Hunt that the car wash was "condemned" and "unsafe for occupancy," and he had thirty days to submit repair plans. These words were enough "to excite attention and put [Hunt] on his guard and call for inquiry." Indeed, Madisonville invited Hunt to inquire about the condemnation order by telling him to "please call Frank Wallace" and giving him the phone number. Hunt is charged with "notice of everything to which such inquiry may have led," and had Hunt called Wallace, he almost certainly would have learned that the city would demolish the car wash if he did not remedy its safety issues.

*Hunt*, 2023 WL 4764699, at *3 (internal citations omitted). This Court agrees with Judge Jennings's conclusion regarding the same notice, given in that case as was given here. Plaintiffs' observation that the letter is designed "to elicit a conversation with the property owner" (D.N. 24, PageID.363 (quoting Wallace Dep.)) further supports the conclusion that the City's letter provides "notice enough to excite attention and put the party on his guard and call for inquiry," which is all that due process requires.[7] *Ming Kuo Yang*, 793 F.3d at 605. Additionally, Michael's attempts to repair the property after receiving the notice (*see id.*, PageID.453) indicate that Plaintiffs were aware that the property was in jeopardy.

In any event, Plaintiffs had actual notice of the demolition. Michael testified that he called Wallace's office and talked to Phillips after he did not receive a response to his first letter, and

---

[7] Plaintiffs also contend that "the City failed to follow its own ordinance regarding notification to property owners." (D.N. 24, PageID.364) In response to the same argument in *Hunt*, Judge Jennings noted that "the question regarding what process is due is not answered by state law or local ordinances but by constitutional benchmarks." 2023 WL 4764699, at *4 (internal quotation marks omitted) (quoting *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 471 (6th Cir. 2008)). Accordingly, "[i]t does not matter whether Madisonville violated its ordinances because . . . the notice it gave [Plaintiffs] was more than enough to satisfy the Constitution." *Id.*

10

Phillips told him, "I'm going to tear that house down." (D.N. 24-5, PageID.457) Plaintiffs therefore knew in advance of the demolition that the mobile home would be demolished. Actual notice "more than satisfie[s]" due process. *Espinosa*, 559 U.S. at 261; *see also Roberts v. Girder*, 237 F. Supp. 3d 548, 555 (E.D. Ky. 2017) ("[D]ue process may be satisfied by actual notice of the decision to demolish the property and the consequences for failure to timely challenge the determination."), *Krueger v. City of Eastpointe*, 452 F. Supp. 3d 679, 690 (E.D. Mich. 2020), *aff'd sub nom. Shandor v. City of Eastpointe*, No. 20-1385, 2021 WL 4775190 (6th Cir. Oct. 13, 2021) ("If an individual did not receive *procedurally* adequate notice but was notified *in fact* that the government intended to deprive the individual of property or a liberty interest, no claim under procedural due process will lie." (emphasis in original)). Thus, Plaintiffs had more than enough notice that the mobile home would be demolished. *See id.*

### 2. Opportunity to be Heard

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane*, 339 U.S. at 313). "In a property case, unless there is an emergency, the hearing must be held before the owner is deprived of his property interest." *Hunt*, 2023 WL 4764699, at *4 (citing *Fitzpatrick v. City of Dearborn Heights*, 181 F.3d 100, 1999 WL 357756, at *2 (6th Cir. 1999) (unpublished table decision)). "[A] fully adversarial evidentiary hearing" is not required. *Loudermill*, 470 U.S. at 545. The degree of formality required depends on (1) the nature of the private interest subject to official action; (2) the risk of erroneous deprivation under the current procedures, and the value of any additional procedural safeguards; and (3) the governmental interest, including the burden any additional or

11

substitute procedures might entail. *See Hunt*, 2023 WL 4764699, at *4 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

Plaintiffs assert that they were "never w[ere] afforded a pre-deprivation hearing, as there was and is no mechanism in place to conduct a hearing." (D.N. 24, PageID.365) The City, however, contends that Plaintiffs could have appealed the condemnation but did not do so. (D.N. 25, PageID.536) Wallace testified that a property owner who disagrees with the City's condemnation determination can meet with Wallace to discuss the state of the property and the work needed to repair it. (D.N. 24-6, PageID.486) If the owner still disagrees with the City's determination, the property owner can go to the city attorney, who acts as an arbiter. (*Id.*, PageID.486–87) Property owners may also hire their own attorney and challenge the condemnation in court. (*Id.*, PageID.487) If the property is an imminent danger, though, the City may demolish it "within days or hours." (*Id.*, PageID.486)

There is no genuine dispute that the City provided adequate pre-deprivation relief in this case. Plaintiffs, particularly Michael, just did not avail themselves of that relief. The record indicates that Michael simply sent letters to the City disputing its authority (*see* D.N. 24-1; D.N. 24-3), and then made superficial repairs to the property without first obtaining the City's permission or verifying that such repairs would remedy the property's issues. (*See* D.N. 24-7, PageID.522; D.N. 24-6, PageID.493, 495–97) Moreover, a month elapsed between the City's condemnation determination and the demolition of the home, yet Michael did not attempt to call the city attorney until the demolition was in progress. (D.N. 24-5, PageID.448) Had Plaintiffs followed the condemnation letter's instruction to call Wallace to discuss the condemnation decision (*see* D.N. 24-1; *see also* D.N. 23-2), "Wallace would have told [Plaintiffs] the reasons for the condemnation, and if [Plaintiffs] believed that anything Wallace said was incorrect, [they]

12

could have corrected him. If [Plaintiffs] still objected to the city's plan, [they] could have appealed its decision to the city attorney . . . ." *Hunt*, 2023 WL 4764699, at *5.

Under the *Mathews* factors, the City's process was constitutionally adequate. First, although Plaintiffs had a strong interest in keeping the mobile home, "the City 'has an interest in maintaining safe dwelling places and in protecting the interests of the public in general.'" *Williams v. City of Stanford*, 533 F. Supp. 3d 512, 531 (E.D. Ky. 2021) (quoting *Roberts*, 237 F. Supp. 3d at 555). Second, the risk of an erroneous deprivation was low. Two City officials, Wallace and Phillips, inspected the mobile home. (D.N. 24-7, PageID.517; D.N. 24-6, PageID.488) And during the month between the City's condemnation determination and the demolition, Plaintiffs could have worked with the City to try to resolve the situation or show that the mobile home was not actually dangerous. *See Hunt*, 2023 WL 4764699, at *5 ("Madisonville's procedures gave Hunt multiple opportunities to show that the car wash was not dangerous and did not need to be demolished, so the risk of an erroneous deprivation was low."). Michael instead wholly rejected the City's authority and decision, unilaterally attempting and failing properly to repair the home.

Third and finally, the value of any additional procedural safeguards would have been minimal. Both Wallace and Phillips determined that the home was dangerous and uninhabitable, notwithstanding Michael's subsequent unauthorized attempted repairs. (*See* D.N. 24-6, PageID.490; D.N. 24-7, PageID.517) "[T]he city's evidence that the [mobile home] was dangerous is so strong that it likely would have demolished [the property] even if its pre-deprivation procedures were as formal as federal court proceedings." *Hunt*, 2023 WL 4764699, at *5. In sum, the City provided Plaintiffs adequate pre-deprivation process.

13

**B.     Substantive Due Process**

There are two forms of substantive-due-process violations: " (1) deprivations of a particular constitutional guarantee, and (2) actions that shock the conscience." *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir. 2018) (citing *Valot v. Se. Loc. Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)).  Plaintiffs assert "that the actions of the City of Madisonville shock the conscience." (D.N. 24, PageID.367)   State action meets this standard when it is "arbitrary, or conscience shocking, in a constitutional sense." *Handy–Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)).  This characterization only applies to conduct "so shocking as to shake the foundations of this country." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012).  Plaintiffs have not identified any conduct that meets that high bar, as "[n]o court has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety." *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994).  Plaintiffs' substantive-due-process claim therefore fails.

**C.     Takings**

Plaintiffs contend that the City's demolition of the mobile home constituted an unlawful taking because "there was no imminent or immediate threat to the safety o[f] persons or property." (D.N. 24, PageID.370)  The Fifth Amendment's Takings Clause "commands that 'private property [shall not] be taken for public use, without just compensation.'" *Ostipow v. Federspiel*, 824 F. App'x 336, 340 (6th Cir. 2020) (quoting U.S. Const. Amend. V).  But "such compensation is not mandated when the state legitimately exercises police power to abate a property nuisance."

14

*Embassy Realty Invs., Inc. v. City of Cleveland*, 572 F. App'x 339, 344 (6th Cir. 2014) (citing *Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006)).

Here, as in *Hunt*, "it cannot be seriously argued that Madisonville took the [mobile home] for a public purpose; it acted pursuant to its police power to remove what it believed to be a dangerous structure." 2023 WL 4764699, at *6. "All claims 'emanating from the use of police power are excluded from review under the Takings Clause.'" *Id.* (quoting *Ostipow*, 824 F. App'x at 342). Thus, the City is entitled to summary judgment on Plaintiffs' takings claim.

**D.     Trespass**

Plaintiffs' remaining trespass claim arises under state law and was before the Court pursuant to its supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c)(3), the Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." The Sixth Circuit "has held that 'a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 905 (6th Cir. 2018) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)). The decision whether to exercise supplemental jurisdiction over pendent state-law claims is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). And that discretion extends to every stage of litigation, including summary judgment. *See Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011).

Having concluded that summary judgment is warranted on Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over their remaining state-law claim. *See* 28 U.S.C. § 1367(c)(3); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007) ("Because the district court dismissed [the plaintiff's] federal claims, the court could properly

15

refuse to exercise supplemental jurisdiction over the pendant state law claims."). That claim will therefore be dismissed without prejudice. *See Kentucky v. Marathon Petroleum Co. LP*, 464 F. Supp. 3d 880, 897 (W.D. Ky. 2020).

## IV.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The City of Madisonville's motion to consider supplemental authority (D.N. 26) is **GRANTED**.

(2) The City of Madisonville's motion for summary judgment (D.N. 23) is **GRANTED** as to Plaintiffs' constitutional claims.

(3) Plaintiffs' remaining state-law trespass claim is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

(4) A separate Judgment will be entered this date.

March 26, 2024

David J. Hale, Judge
United States District Court